Our final case this morning is number 13-1483, N. Ray James Cox. Mr. Cowell. Good morning. Be pleased to court. I'm going to get right to my two main points here. I believe the Patent Office has committed harmful error, first for improper claim construction, and second, regardless of claim construction, the Patent Office's reliance for obviousness is based on KSR's simple substitution, and I believe this is an insufficient motivation for combining Miller's billing codes into Eisenberg's privileging system to result in a privileging determination based on both privilege information and billing code information. So I'm going to turn to simple substitution first, and it's clearly set forth in the patent statute. An applicant is presumptively entitled to a patent unless the Patent Office meets its burdens to show anticipation, obviousness, or some other form of rejection. In this case, the only pending rejection is an obviousness rejection, and from the written record, both Cox and the Patent Office agree that privileging systems are known in the yard, and Cox, in the record at A57, further concedes that an entire industry is developed out there relating to billing codes and billing systems for analyzing for billing purposes, but to date, no one has used billing codes in the context of a privileging determination for whether a hospital worker, such as a doctor, is entitled to perform a particular procedure. So patentability... Eisenberg, in discussing privileging, doesn't suggest the use of the billing codes, but it does suggest the use of billing codes for other purposes. Yeah, billing codes are for other purposes, and as I've just now conceded, billing codes have been used in the industry for ages for the specific purposes of assigning a procedure to a cost or to a billing code for purposes of billing, which is separate from a determination of whether a doctor is privileged to perform a certain procedure. Why is the point at which the billing code information is employed, why does that make a difference, whether it's before the procedure or after the procedure? Why does that make a difference to whether the invention would have been obvious? In the context of performing services, I don't think it makes a whole lot of difference. Meyer's invention seems to be saying, well, if you do it contemporaneous, it's advantageous because the doctor's right there, he can put in the code, and it serves a purpose. In our system, if you do it later, it really has to be done up front because the whole purpose is for privileging, determine whether before something is done, the doctor can perform that. And what I think that might be a misunderstanding from my understanding of the patent office's claim interpretation, which is a little vague at times, is that we have two distinct pieces of information. We have privilege information and billing codes, and then further relational information that ties that billing code to what we call in the specification a privilege, which in our claim we define as a privilege is a medical procedure to which the doctor is authorized or privileged to perform. So as an analogy, I consider that from our specification, it's clear that there is certain criteria to determine whether a doctor is privileged for a procedure that can encompass the doctor's basic education and training, educational requirements, and other things. And from that, you can get basically a collective, not a single procedure, but a collective group of procedures that the doctor is scheduled or is permitted to or privileged to perform. These can be simple basic procedures, very specialized procedures, but there's basically a collective group of procedures where billing codes are tied to a specific procedure. So I still don't understand. I mean, the question is whether or not it would have been obvious to use billing codes for these purposes. So why does it matter where billing codes fall into the chronology of use as long as they are factored in to the decision-making process? I think it's in a way, it's probably a red herring. I don't think it really matters. I think it's kind of, in the record, I don't think it really matters. That's not really that germane, is my point. I think our position is that the claims are clear that in order to perform privilege, the privileging computer requires three types of information. Privilege information, billing codes, and relational information that ties that billing code to something related to the privilege, which is the medical care. So it requires all of those, but under the patent law... It's rather common, is it not, to use billing codes as a way, as a convenient way of identifying a procedure. And all that's happening here is that the applicant is saying, okay, let's use the billing codes to identify the procedures for which the doctor is authorized. So the question is whether using that as a shorthand in this particular context would have been obvious given the fact that billing codes were used to identify procedures in all sorts of other contexts. Fair enough? I think the record pretty much makes it clear that no one has ever put those in the context of a privileging determination before. And one reason, I think, is because... But it does show that they were used in other contexts to identify procedures, right? Yes. But their relevance to a determination of privileging is not known in the art. And I think what's important, maybe as an analogy, is there's an overscoping range of privileges. Privileges could be, okay, I recently had a kidney stone surgery. So maybe the urologist may have a certain broad scope of privileges or general procedures, very abstractly defined, that he can perform. Where billing code is more specifically tied to specific ones of those. So the collective privilege information is a collective where the billing code is a singular one. And our specification, if it's read in light of the specification, our terms, billing codes are designed to perform a different function. Their function is to gauge the performance of the privilege. It may be a clever way to do this. And it may be that, as a result, they're the first ones out there and they're going to make a lot of money. But isn't there a difference between maybe just cleverly reordering things and whether or not it's patentable? I don't think the patent office really... I mean, the burden is on the patent office to establish obviousness. And I think right now their main position is not much more than what we've conceded on the record is that privileging information is known, billing codes are known, but no one has really tied those together in determining of an actual privilege. And I think the patent office's position is that privileging information is defined as, has the function of associating with a medical procedure. Billing codes have the same function of associating with a medical procedure. And therefore, they're identical in function. They're interchangeable, substitutable. One can be substituted for the other. You end up with something that to me seems inconsistent with our specification says that they're two separate things with different functionality. And our system requires both of them. And their simple substitution logic is insufficient to support a motivation for combining them. I still, I guess, want to go back to the point that I think there is a difference between them. Privileging information... Why is there a motivation to combine them that it's well known to be a convenient way of identifying particular procedures? I will agree with that assessment that it is well known to identify a procedure, but not necessarily a privilege that's associated with a particular doctor or not a privilege. I think maybe one simple example of this in the context of our specification, we say the billing codes are gauged the performance of a privilege. So in the context, maybe this doctor has 10 years of education and basic training, but by associating billing codes tied to that privilege of that doctor, we could say, for instance, okay, he has performed 50 surgeries in this specific billing code. That is gauging a level of performance. Not only has he has the basic concept to perform this, but he has a certain level of experience as identified by the quantity of billing codes to a single procedure that maybe entitles him from a privilege determination to be entitled to additional privileges. So that's something more than just basic background information. Privilege is a specialized type of billing or specialized type of identification of a procedure and how that can be tied to making a determination of privilege. And it still goes on to claim construction. I still think that the Patent Office really hasn't defined what our invention is. And throughout prosecution, in a way, it seems to us to turn on one hand, they say we understand the invention. The invention in the specification is tying of billing codes to privileges, but yet that's not the focus of your claims. Your claims are doing something different, but yet there's no 112 rejection. So it appears to me that they are interpreting the claims completely abstractly without reference to the specific definitions for that terminology we have in red and white in the specification. And because of that, I think... You conceded below, though, that claim one is representative, right? Yes, yes. So I'm not sure how you were arguing in your brief that somehow there was error that they didn't separately consider the additional claim. I will concede that everything will stand and fall in one. One is the one that we focused our arguments on. And claim one requires that the privilege determination is based on three separate pieces of information. Privilege information, which we define as information relevant to define a medical procedure that a particular health care worker can have privileges to perform. We have billing codes, which are tied to billing information, which is tied to billing code. And relational information that ties that billing code to not a procedure, but the privilege procedure, which is predefined above as the procedure that the health care physician or worker is privileged to perform. And I don't see where the Patent Office has met its burden to show that the references collectively have anything more than just a collection of pieces with other reasons why you'd have billing codes, but not why you tie billing codes to a particular privilege within a privilege determination system. I will concede that it's tied to some sort of an abstract procedure, but how that pertains or is relevant to determining privilege does not really come forth in rejection, absent hindsight consideration of what our inventor is doing. And the Patent Office itself has conceded that no one in the art has done that specifically in the past. Okay. Mr. Cowan, do you want to save the rest of your time? Yes. Good morning and may it please the Court. I want to touch on the Prior Art Eisenberg Reference really quickly and then I'm going to address the claim construction issues that were raised today. The Prior Art Eisenberg Reference discloses a computer system, which among other things, carries out privileging determinations. So the privileging determinations here, all it is is determining whether a particular health care worker is allowed to perform a particular procedure in a particular facility. So does Dr. Jones get to do a heart bypass surgery at Georgetown University Hospital? The way Eisenberg does this is it uses two pieces of information or two general sources of information. One is pre-existing privilege information. That's things like the credentials or the training of a health care worker along with his or her existing privilege status. Then it takes another piece of information, which is collected information about the outcomes that that health care worker has had doing that type of procedure in the past. And it creates a reevaluation to determine whether the privilege should be granted going forward. So this is very similar to Mr. Cox's invention. And as we've been discussing, billing codes are the key difference. Eisenberg is agnostic. It just talks about identifying an individual procedure. It doesn't require the use of billing codes when making a privilege determination. But billing codes were well-known in the art at the time, and they were well-known as a standardized way of identifying procedures. And there are a number of benefits to having a standardized way of identifying procedures. Well, do you agree that there can be a difference between using billing codes for purposes of billing and using them for something else? Well, the ultimate purpose is different, but the role that they're filling in each case is the same. The billing code in each case is to identify a procedure, and it does it with very fine granularity. So it identifies a procedure in a standardized way. That's the reason why they're used for billing. So you would submit it to an insurance company who gets hundreds of thousands of claims, and they want to know exactly what you're talking about, what exactly procedure you carried out, and that's why the standardization is important. Now, you can imagine why this would also be important if you want to determine whether to allow somebody to carry out a procedure or if you want to do a checkup and see if they've been carrying out their procedure as well. You want to know if it was a difficult heart bypass or whether it was a simple heart bypass, and billing codes give you that type of granularity. So you can get not just heart bypass, a descriptor. When we talk about things, our language is fallible, but the billing code allows you to get to the granularity of it was a heart bypass on one valve or two valves. It involved imaging or no imaging, and so it gives you a very specific way of evaluation. Does it matter whether it's before the procedure or after the procedure? Not at all. In either case, it's exactly the same. It's serving exactly the same purpose, which is just identifying what the procedure is. So the before-after dichotomy has nothing to do with the system. And, in fact, the Myers reference, it discloses a relation, a computer system relating the billing codes, along with relates those billing codes to the specific medical procedures. But at the same time, it does it for billing, which comes afterwards, but it also does it prospectively. And the Eisenberg system also is prospective. Myers does it to schedule later appointments. It's actually the exact same purpose that Eisenberg does it for. So Eisenberg takes and makes the privileging determination as part of a decision of whether to schedule a specific doctor to do a procedure later on in the hospital. So they're actually very similar purposes disclosed in Myers as in Eisenberg. So it makes sense to use the billing codes, that strategy of using a standardized billing code. It makes a lot of sense to use that in the Eisenberg system. So I just want to touch really quickly on the claim construction issue. I think that the issue is there's – the claims at issue have a plain language. The plain language of the claim suggests one interpretation. Privilege information, identifying at least one medical procedure. Billing code, including at least one medical billing code. And relational information that has a relationship between a medical procedure and a billing code. I think the claims are clear on their face, but any dispute about the scope of these claims is really superfluous because Eisenberg discloses all the things that the appellant might be arguing about. For example, issues about what exactly privilege information might be. Defending claim two includes basic medical education requirements, and Eisenberg talks about the credentialing or the training that a person might have. The board made a sort of vague reference to written description, and your friend on the other side referenced that issue. What do you interpret that discussion to be? Well, I think the discussion is that the specification here discloses – linking billing codes to privileges. It never kind of goes through this intermediate step of linking billing codes to a procedure, procedure to privilege. So I guess it would be it's directions to get from, you know, Bethesda to Arlington. It's not – it doesn't disclose directions that go Bethesda to Georgetown to Arlington. I don't know whether 112 is a good issue or not, whether written description is a good issue or not in this case. It's certainly not before the court here. There's no reason to reach the issue, and the board didn't even reach the issue. They just said the specification is talking about one type of relationship, and this – you can imagine on a computer system that might be important because you have tables where you would look up specific things. The specification seems to contemplate tables that look up a privilege based upon a billing code. The claims look like they are contemplating a situation where you would look up a procedure based upon a billing code and then look up a privilege based upon a procedure. It's slightly different, whether it's meaningful in the written description sense. It's just not – there's just not enough findings. Okay. Thank you very much. Thank you, Mr. Allen. Mr. Fallon, you've got a little over three minutes here. Okay. I'm going to turn back to, I guess, still claim construction. I still feel that there is a difference between what he's conceded. You know, the specification identifies tying of billing codes to procedures, which would – our claim is read in light of specification. Our claim should be read with that consistent analysis that our billing code, relational information ties that billing code to a privilege, not just a procedure but a privilege. And I think the way we do that is you interpret the claim consistent with the specification such that our specific claim language of privilege information identifying at least one medical procedure permitted for a healthcare worker to perform, in essence, is saying that at least one medical procedure permitted for a healthcare worker to perform is identification of a privilege. And the relational information ties that billing code to that at least one privileged procedure. So there is a tying to a privilege. And I still do not believe that the patent office has made its burden to show that the prior art necessarily shows that billing codes can be tied relationally to a specific privilege. Instead, there's only the loose association that both can tie to a certain procedure. But I still think there's a semantic difference between those two. And other than that, I have no specific comment. Any questions? Thank you, Mr. Kemp. Thank you. Thank both counsel. The case is submitted and that concludes our session for today. All rise. The Honorable Court is adjourned from day to day. Thank you.